IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING

U.S. DISTRICT COURT
DISTRICT OF WYOMING

2022 SEP 27 AM 9:45

MARGARET BOTKINS, CLERK
CASPER

| | |
|---|---|
| KENNETH MCGRADY, individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>VS.<br><br>COLLECTION PROFESSIONALS, INC., a Wyoming Corporation,<br><br>BARNEY & GRAHAM, LLC,<br><br>WESTON T. GRAHAM,<br><br>CHRISTOPHER COCCIMIGLIO, and<br><br>DAVID C. COCCIMIGLIO<br><br>Defendants, | Case No. 22-CV-100-SWS |

## ORDER DENYING DEFENDANTS' MOTIONS FOR JUDGMENT ON THE PLEADINGS

This matter comes before the Court on Defendants' Motion for Judgment filed by defendants Barney & Graham, LLC and Weston T. Graham (ECF No. 27) (collectively hereinafter "Graham"), and Defendants' Motion for Judgment on the Pleadings filed by defendants Collection Professionals, Inc., Christopher Coccimiglio, and David C. Coccimiglio (ECF No. 29) (collectively hereinafter "CPI"). Plaintiff Kenneth McGrady ("McGrady") filed a response to both motions (ECF No. 32), and both Graham and CPI

replied (ECF No. 33.) Having considered the parties' arguments, the Court DENIES both motions.

## BACKGROUND

This case involves a class action Complaint filed by McGrady alleging Graham and CPI violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* ("FDCPA") by intentionally and persistently using defective summonses in Wyoming state court collection cases. (ECF No. 1 ¶ 1.) Both CPI and Graham are in the business of collecting debts originating with third-party creditors and are therefore subject to the FDCPA's restraints on debt collection. (*Id.* ¶¶ 22–26.) CPI's primary business is debt collection, while Graham is an attorney and law firm that assists CPI in collecting said debts. (*Id.* ¶¶ 23, 38.)

In this action, McGrady alleges CPI drafted and approved the defective summonses, and in turn delivered them to Graham to be filed and served in Wyoming Circuit Court. (*Id.* ¶¶ 27–28, 37–38.) Specifically, McGrady alleges the summonses were defective in four ways, each of which violated Wyo. R. Civ. P. Cir. Ct. 3.1(b): (1) failing to disclose the circuit court's address where a responsive pleading could be filed to avoid default; (2) not disclosing Graham's street address as required by the rule; (3) failing to inform the defendant that a notice of filing would be served once the summons, complaint, and proof of service are filed with the court; and (4) by falsely stating by failing to respond to the lawsuit "judgment by default *will* be taken against you" instead of "*may*" by taken against you. (*Id.* ¶¶ 31–34.)

Underlying this case are two Wyoming Circuit Court actions involving McGrady, CPI, and Graham. In the first case, on March 29, 2021 CPI and Graham served a summons on McGrady in case no. CV-2021-221 ("First Wyoming Case"). (*Id.* ¶ 50–51.) The Wyoming Circuit Court struck service of process in the First Wyoming Case, finding the "failure to include the [c]ourt's address [on the summons] is a radical defect and impairs the defendant's right to an opportunity to be heard in court." (ECF No. 1-2 at 3.) Both parties were heard in the First Wyoming Case and were given an opportunity to appeal. (*Id.*) They did not.

Subsequently, on December 28, 2021, CPI and Graham filed another collection action against McGrady in case no. CV-2021-656 ("Second Wyoming Case"). (*Id.* at 1–2.) However, the court dismissed the Second Wyoming Case with prejudice pursuant to Wyo. R. Civ. P. 40(b), finding the summons issued to McGrady contained the same deficiencies as in the First Wyoming Case.[1] (*Id.* at 2–3.)

McGrady filed the instant class action[2] against CPI and Graham alleging that the repeated use of defective summonses violated numerous provisions of the FDCPA, including various subsections of 15 U.S.C. §§ 1692d, 1692e, and 1692f. (ECF No. 1 ¶ 75–76.)

---

[1] The Wyoming Circuit Court also found the underlying complaint in the Second Wyoming Case failed to state a claim upon which relief can be granted. (ECF No. 1-2 at 1.) However, because the underlying state court complaint does not form the basis of McGrady's FDCPA claim, the Court need not address it here.

[2] The Complaint alleges McGrady's counsel identified 2,686 collections cases filed by CPI and Graham in 2021. Any potential class has yet to be certified, and therefore is not at issue for the purposes of this order.

While CPI and Graham filed separate motions pursuant to Fed. R. Civ. P. 12(c), both present substantially similar arguments for judgment on the pleadings. First, both CPI and Graham argue the First Amendment's Petition Clause grants them immunity from suit. Second, CPI and Graham argue the defects in the summonses do not violate the FDCPA as a matter of law.

## LEGAL STANDARD

Motions to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6) and motions for judgment on the pleadings under Fed. R. Civ. P. 12(c) are reviewed under the same standard. *Ward v. Utah*, 321 F.3d 1263, 1266 (10th Cir. 2003). To survive either motion, a complaint's factual allegations, assumed to be true, must "raise a right to relief above the speculative level" and must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

"[T]he complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphases in original). The plausibility standard does not require a plaintiff to show that a defendant probably acted wrongfully, but it requires more than "a sheer possibility." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Thus, mere 'labels and conclusions,' and 'a formulaic recitation of the elements of a cause of action' will not suffice; a plaintiff must offer specific factual allegations to support each claim." *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S.

at 678 (quoting *Twombly*, 550 U.S. at 557). The Court accepts the nonmoving party's well-pled factual allegations as true but is not bound to accept an asserted legal conclusion as true. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

## DISCUSSION

### A.  Conversion to Summary Judgment

As a preliminary matter, the Court must decide whether to treat both Graham and CPI's motions as those for judgment on the pleadings, or instead covert them to motions for summary judgment pursuant to Fed. R. Civ. P. 56. This is because Graham and CPI ask the Court to consider matters beyond the four corners of McGrady's Complaint—namely, the state court complaint filed in the Second Wyoming Case ("State Court Complaint")—when ruling on their motions. (*See* ECF No. 28-1, 29-1.)

Generally, a 12(b)(6) or 12(c) motion must be converted to a motion for summary judgment under Fed. R. Civ. P. 56 if matters outside the pleadings are presented and not excluded by the court. *GFF Corp. v. Assoc.'d Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997). Notwithstanding this general rule, if a plaintiff does not incorporate by reference or attach a document to its complaint, "but the document is referred to in the complaint *and* is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss." *Id.* (emphasis added).

Here, McGrady does not contest the authenticity of the State Court Complaint, and it is at least indirectly referred to in his Complaint by incorporating the Second Wyoming Case's order of dismissal. (*See* ECF No. 1-2 at 1.) However, the Court is not convinced the State Court Complaint is *also* "central to the plaintiff's claim" in this matter. The very

essence of McGrady's claim is that the *summons* was defective—therefore violating the FDCPA—not the State Court Complaint. Because the State Court Complaint is not central to McGrady's claim, the Court will exclude its consideration. *GFF Corp.*, 130 F.3d at 1384. Therefore, both CPI and Graham's motions will proceed as motions for judgment on the pleadings.

### B. Petition Clause Immunity

The First Amendment protects "the right of the people . . . to petition the Government for a redress of grievances." U.S. Const. amend. I.[3] The right to petition is "one of the most precious of the liberties safeguarded by the Bill of Rights, and . . . is implied by the very idea of a government, republican in form." *CSMN Invs., LLC v. Cordillera Metro. Dist.*, 956 F.3d 1276, 1282 (10th Cir. 2020) (quoting *BE & K Const. Co. v. NLRB*, 536 U.S. 516, 524–25 (2002) (cleaned up). Immunity flows from the right to petition, "protecting those who seek redress through the courts from liability from petitioning activities." *Id.* Although the contours of the immunity originally grew out of a line of antitrust cases involving the Sherman Act, the Tenth Circuit now extends it beyond such situations. *Id.* at 1283 (citing *United Mine Workers of Am. v. Pennington*, 381 U.S. 657 (1965); *E.R.R. Presidents Conf. v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961)).

The Tenth Circuit has not specifically addressed if legal proceedings initiated under the FDCPA are entitled to Petition Clause Immunity. CPI and Graham rely heavily on two cases from the District of Utah for the proposition that Petition Clause Immunity shields

---

[3] The First Amendment applies to state and local government activities through the Fourteenth Amendment. *See City of Columbia v. Omni Outdoor Advert., Inc.*, 499 U.S. 365, 384 (1991).

them from liability for any false, deceptive, or misleading statements made in pursuit of debt collection under the FDCPA. *See Holmes v. Crown Asset Mgmt., LLC*, No. 2:19-CV-00758, 2021 WL 3473050 (D. Utah Aug. 6, 2021); *Reyes v. N.A.R., Inc.*, 546 F.Supp.3d 1031 (D. Utah 2021). However, courts even within the District of Utah are split on the issue of whether Petition Clause Immunity shields debt collection petitioning under the FDCPA. *See Chamberlain v. Crown Asset Mgmt.*, No. 1:21-CV-00146-DAK, 2022 WL 2158340 at *8 (D. Utah June 15, 2022).[4] Numerous courts outside the Tenth Circuit have taken a hardline position that Petition Clause Immunity does not confer a right upon debt collectors to petition courts in a manner that violates the FDCPA. *See Hartman v. Great Seneca Fin. Corp.*, 569 F.3d 606, 616 (6th Cir. 2009) ("the First Amendment does not shield lawyers engaged in litigation from FDCPA liability"); *Nyberg v. Portfolio Recovery Assocs., LLC*, No 3:15-cv-01175-PK, 2016 WL 3176586 at *8 (D. Ore. June 6, 2016) (collecting cases).

The Court finds the latter position particularly persuasive considering the Supreme Court's analysis in *Heintz v. Jenkins*, which squarely held that attorneys who engage in consumer debt-collection activity—even when such activity consists of litigation—are subject to the restraints of the FDCPA. 514 U.S. 291, 299 (1995). For this Court to find that attorneys engaged in such practice are entitled to absolute immunity does not comport with the Supreme Court's logic. After all, one cannot be subject to the statutory constraints

---

[4] The district court in *Chamberlain* recently certified its order for interlocutory appeal to resolve the question of whether the Petition Clause allows for an unregistered debt collector under Utah law to be punished for filing a debt collection lawsuit. See *Chamberlain v. Crown Asset Mgmt.*, No. 1:21-CV-00146-DAK, 2022 WL 3445952 (D. Utah. Aug. 17, 2022).

of the FDCPA and then be entitled to absolute immunity at the same time—this Court doubts the Supreme Court simply failed to consider the Constitution when deciding *Heintz*.

That said, this Court need not resolve this issue while *Chamberlain* is currently on appeal to the Tenth Circuit. As the following analysis demonstrates, even if Petition Clause Immunity were to apply to litigation under the FDCPA, CPI and Graham are not entitled to such immunity in this case.

### i. The *Professional Real Estate* Sham Petition Exception

Assuming without deciding that debt collection petitioning activity under the FDCPA is entitled to Petition Clause Immunity, such immunity is not without limits. Recognizing the immunity could be used to harass enemies, the Supreme Court carved out an exception for "sham petitioning":

> There may be situations in which a publicity campaign, ostensibly directed toward influencing governmental action, is a mere sham to cover what is actually nothing more than an attempt to interfere directly with the business relationships of a competitor and the application of the Sherman Act would be justified.

*CSMN*, 956 F.3d at 1283 (citing *Noerr*, 365 U.S. at 144). The Tenth Circuit has adopted the oft-cited two-part test from *Prof'l Real Estate Inv'rs, Inc. v. Columbia Pictures Indus., Inc*, 508 U.S. 49 (1993) (*Professional Real Estate*), to determine what constitutes "sham-petitioning," and is therefore excluded from Petition Clause immunity. *Id.* (citing and adopting test).

Under the first step, a court considers whether the petitioning has an objectively reasonable basis; and if yes, then immunity applies. *Id.* If not, a court then considers the subjective motivation behind the petitioning to determine whether it constitutes a sham. *Id.*

at 1283–84. Ultimately, the test is designed to protect unsuccessful, yet reasonably based lawsuits. *Id.* at 1285.

### ii. The *California Motor* Sham Petition Exception

There exists an alternate basis for finding petitioning activity falls within the sham exception to Petition Clause Immunity. In *California Motor*, the Supreme Court recognized "sham litigation occurs when there is a pattern of baseless, repetitive claims" which lead the factfinder to conclude that the administrative or judicial processes have been abused. *Id.* at 1288 (quoting *Cal. Motor Trans. Co. v. Trucking Unlimited*, 404 U.S. 508, 513 (1972)). Despite recognizing this exception, the *CSMN* court did not find the *California Motor* sham test applicable because the parties had only been involved in a single lawsuit that had been appealed to three different courts. *Id.* In contrast, the petitioners in *California Motor* repeatedly brought claims in both state and federal court. *See California Motor*, 404 U.S. at 509.

Although the Tenth Circuit has not directly addressed the issue, other circuits have reconciled the tests from *Professional Real Estate* and *California Motors* by applying them in different situations. For instance, the Fourth Circuit reasoned that because *Professional Real Estate* was decided over twenty years after *California Motor*, absent any indication overruling itself, the Supreme Court did not intend one test to supplant the other. *Waugh Chapel South, LLC v. United Food and Com. Workers Union Local 27*, 728 F.3d 354, 363 (4th Cir. 2013) (quoting *Rodriguez de Quijas v. Shearson/Am. Express., Inc.*, 490 U.S. 477, 484 (1989) ("follow the case which directly controls, leaving the Supreme Court the prerogative of overruling its own decisions")).

The *Waugh Chapel* court went on to conclude that where a purported sham litigation encompasses a *single legal action*, the test from *Professional Real Estate* should apply, whereas *California Motor* should apply to a *series of legal proceedings*. *Id.* at 364. This distinction comports with the approach adopted by several other circuits. *See Hanover 3201 Realty, LLC v. Village Supermarkets, Inc.*, 806 F.3d 162, 179–80 (3d Cir. 2015); *Primetime 24 Joint Venture v. Nat'l Broad. Co.*, 219 F.3d 92, 101 (2d Cir. 2000); *USS-POSCO Indus. v. Contra Costa Cnty. Bldg. & Constr. Trades Council, AFL-CIO*, 31 F.3d 800, 810–11 (9th Cir. 1994).

Under the *California Motor* standard, the inquiry is "whether a series of petitions were filed with or without regard to merit and for the purpose of using the governmental process (as opposed to the outcome of that process) to [inflict harm]." *Hanover 3201*, 806 F.3d at 180. This is a more flexible standard than the rigid two-step step test under *Professional Real Estate* and requires a holistic review by the district court to determine whether the administrative and judicial processes have been abused. *Id.*; *see Waugh*, 728 F.3d at 364–65. In addition to considering a petitioner's filing success—i.e. their "win-loss record"—as circumstantial evidence of their regard to merit, courts should consider other evidence of bad faith as well as the "magnitude and nature of the collateral harm imposed" by the petitioning activity. *Hanover 3201*, 728 F.3d at 181 (citing *Professional Real Estate*, 508 U.S. at 68 (Stevens, J., concurring)).

Given the Tenth Circuit's acknowledgment of both *California Motor* and *Waugh Chapel* in its *CSMN* opinion, the Court is persuaded the distinction adopted by the Second, Third, Fourth, and Ninth Circuits is appropriate when evaluating purported sham

litigation.[5] With these standards in mind, the Court turns to CPI and Graham's claims for Petition Clause Immunity.

### iii. The CPI and Graham Motions

The first issue the Court must decide is which test applies: the more stringent approach from *Professional Real Estate* or the more flexible standard as articulated in *California Motor*.

Here, McGrady was personally the target of multiple lawsuits filed by CPI and Graham using the same defective summons. (ECF No. 1 ¶¶ 54–57.) McGrady's Complaint further alleges his counsel has identified 2,686 collection cases filed by CPI in Wyoming in 2021 (*Id.* ¶ 72) utilizing a template summons that contained deficiencies (*Id.* ¶¶ 27–30), which were in turn reviewed, signed, and filed by Graham. (*Id.* at 37–38). Furthermore, both CSI and Graham generally admit the summons was a template used in other consumer collection cases in Wyoming. (ECF No. 16 ¶¶ 27–28) (ECF No. 19 ¶¶ 27–28.) Given these circumstances, it is appropriate for the Court to analyze CPI and Graham's filings as a series of repetitive claims under the *California Motor* standard and determine whether, based upon the allegations in the complaint, a plausible claim has been alleged that the judicial process has been abused.

---

[5] However, not all circuits agree. The Seventh Circuit recently rejected the notion of a separate standard for multiple lawsuits under *California Motor*, reasoning instead that the opinion was instead the origin of *Professional Real Estate's* first step: an objective reasonableness standard. *U.S. Futures Exchange, L.L.C. v. Bd. of Trade of the City of Chi., Inc.*, 953 F.3d 955, 964 (7th Cir. 2020); *accord Puerto Rico Tel. Co. v. San Juan Cable LLC*, 874 F.3d 767 (1st Cir. 2017). The Seventh Circuit found little logic in "concluding that a petitioner loses the right to file an objectively reasonable petition merely because it chooses to exercise that right more than once." *U.S. Futures Exchange*, 953 F.3d at 965.

In conducting its "holistic review," the Court begins by noting there is no record of CPI or Graham's filing success for it to consider beyond the First Wyoming Case and the Second Wyoming Case against McGrady. However, those cases alone demonstrate a significant procedural defect that resulted in zero filing success. Further, CPI and Graham had *notice* of the procedural defect after the First Wyoming Case was dismissed and are alleged to have refiled *the same defective summons* again in the Second Wyoming Case. While not dispositive on its own, such an alleged action is indicative of bad faith on the part of CPI and Graham. On the well-pled facts before this Court and CPI and Graham's own admissions, they have filed hundreds, if not thousands, of defective summonses in Wyoming Circuit Courts. The sheer magnitude of the collateral harm supports a reasonable inference supporting the finding of sham petitions.

Finally, the Court does not ignore McGrady's allegations the defective summonses were used as a tactic to reduce litigation costs by impeding consumers from defending collection suits, thereby increasing CPI and Graham's bottom line. (ECF No. 1 ¶¶ 46–47.) Taken as true for the purposes of this motion, such facts are further indicative of bad faith on the part of CPI and Graham. Therefore, upon a holistic review of the alleged circumstances surrounding CPI and Graham's litigation activities under the FDCPA, the Court finds it to be sham petitioning under *California Motor*. *See Hanover 3201,* 806 F.3d at 180.

For this Court to find otherwise would essentially declare the Wyo. R. Civ. P. Cir. Ct. unconstitutional and invite debt collectors to abuse the legal process to aid in the collection process. To afford constitutional protection to those that knowingly and

repeatedly violate procedural rules would make such rules null and void, an untenable result that is counter intuitive to the purpose of the justice system. This is not to suggest that *any* violation of the Wyo. R. Civ. P. Cir. Ct. or other civil procedure rules amounts to a sham petition unworthy of Petition Clause Immunity. However, on the alleged facts before the Court, CPI and Graham's conduct falls squarely within the *California Motor* exception.

CPI and Graham urge the Court to look to *Holmes* and *Reyes* for the sweeping proposition that Petition Clause Immunity "protects all those who seek redress through the courts from liability for petitioning activities," including all such activities conducted under the FDCPA. (ECF No. 30 at 9.) As discussed *supra*, the Court declines to take a stance on whether Petition Clause Immunity shields debt collection litigation from liability under the FDCPA. Nevertheless, both *Holmes* and *Reyes* still firmly find Petition Clause Immunity does not protect sham petitions. *Reyes*, 546 F.Supp.3d at 1037; *Holmes*, 2021 WL 3473050 at *2. Having concluded that under *California Motor* CPI and Graham were engaged in sham petitioning, the Court's findings are consistent with both *Holmes* and *Reyes'* limitations.

For the foregoing reasons, even supposing Petition Clause Immunity extends to actions filed under the umbrella of the FDCPA, CPI and Graham are not entitled to such immunity in this case.

### C. FDCPA Claim

Congress enacted the FDCPA to "eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt

collection purposes are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). Under the FDCPA, debt collectors are prohibited from using false, deceptive, or misleading representations, or unfair or unconscionable means in attempting to collect a debt. *See* 15 U.S.C. §§ 1692e, 1692f. The statutory text of § 1692e and § 1692f provide examples of practices that violate these prohibitions, but the text makes clear the examples are non-exhaustive. *Id.*

To prevail on a FDCPA claim, a plaintiff must prove four elements: (1) the plaintiff is a "consumer" under 15 U.S.C. § 1692a(3); (2) the debt at issue arose out of a transaction entered into primarily for personal, family, or household purposes; (3) the defendant is a debt collector under 15 U.S.C. § 1692a(6); and (4) through its acts or omissions, the defendant violated the FDCPA. *Tavernaro v. Pioneer Credit Recovery, Inc.*, 43 F.4th 1062, 1068 (10th Cir. 2022). Because the FDCPA is a remedial statute, it should be construed liberally in favor of the consumer. *Johnson v. Riddle*, 305 F.3d 1107, 1117 (10th Cir. 2002).

Upon review, the Court finds McGrady's Complaint alleges sufficient facts to establish the first three elements of a viable FDCPA claim. In their respective motions, CPI and Graham only contest the fourth element—whether their conduct amounted to a violation of the FDCPA.

In his Complaint, McGrady alleges CPI and Graham committed a lengthy list of FDCPA violations, including, *inter alia*, § 1692e. (ECF No. 1 ¶ 76.) The Court now turns to this issue.

### i. Legal Standard

The Tenth Circuit recently held for the purposes of 15 U.S.C. § 1692e—the FDCPA's prohibition on the use of false, deceptive, or misleading representations—a consumer must show such representations are material, meaning a reasonable consumer would be frustrated in his or her ability to intelligently respond to the debt collection effort. *Tavernaro*, 43 F.4th at 1067. Put another way, for a representation to be material, it must be "capable of influencing the consumer's decision-making process." *Id.* (quoting *Van Hoven v. Buckles & Buckles, P.L.C.*, 947 F.3d 889, 894 (6th Cir. 2020)). In measuring materiality, courts must do so from the perspective of the reasonable consumer—not the unsophisticated consumer or the least sophisticated consumer, as previous cases may have suggested. *Id.* at 1072. The *Tavernaro* court provided a succinct summation of the appropriate inquiry:

> In summary, a representation violates § 1692e only if it is materially false, deceptive, or misleading to the reasonable consumer. Applying this standard, the first question is whether the representation is misleading. In viewing representations from the perspective of the reasonable consumer, we assume the reasonable consumer would read a communication in its entirety and make sense of a communication by assessing it as a whole and in its context. The inquiry is whether the reasonable consumer could reasonably interpret the representation to have multiple meanings, one of which is untrue. If a reasonable consumer would come to only one interpretation, which is accurate, then the representation is not misleading. On the other hand, if a reasonable consumer could understand a representation as misleading, materiality is then assessed by asking whether the reasonable consumer would have his ability to intelligently respond frustrated.

*Id.*

### ii.   CPI and Graham's Representations

As previously noted, McGrady alleges four components in each defective summons amounted to false, deceptive, or misleading representations: (1) failing to disclose the circuit court's address where a responsive pleading could be filed to avoid default; (2) not disclosing Graham's street address as required by the rule; (3) failing to inform the defendant that a notice of filing would be served once the summons, complaint, and proof of service are filed with the court; and (4) falsely stating that "judgment by default will be taken against you" instead of "may" by taken against you. (ECF No. 1 ¶¶ 31–34.)

Applying *Tavernaro*, the Court finds failing to disclose the circuit court's address, not disclosing Graham's street address, and by stating a judgment by default *will* be taken against you are either false, misleading or deceptive to a reasonable consumer. By failing to include the court's address and Graham's address, it at least arguably makes it more difficult for McGrady to intelligently respond to the debt collection efforts. *See Tavernaro*, 43 F.4th at 1067. A reasonable consumer receiving such a summons would likely be confused as to how to respond to the lawsuit. As pled, such omissions amount to deceptive or misleading tactics aimed at frustrating a defendant's response.

Further, stating default judgment *will* be taken against you instead of *may* be taken against you is false on its face. A reasonable consumer could only interpret this in one way: if I fail to respond, I will face default judgment. As McGrady points out, this is not a correct statement of the law. *See Multiple Resorts Ownership Plan, Inc. v. Design-Build-Manage, Inc.*, 45 P.3d 647, 655–56 (Wyo. 2002) (explaining while entry of default is an act performed by the clerk foreclosing defense as to liability, entry of default judgment—

including the amount of damages—is a function of the trial court and may require additional evidence). The plain text of the rule supports this interpretation: "[The summons] shall notify the defendant that in case of failure [to answer the complaint] judgment by default *may* be rendered against the defendant." Wyo. R. Civ. P. Cir. Ct. 3.1(b)(2). While CPI and Graham attempt to downplay the distinction between "may" and "will," the two have starkly different meanings—"may" is permissive, while "will" is mandatory. Given CPI and Graham had two chances to serve a proper summons on McGrady and failed to do so, the Court finds McGrady has pled sufficient facts to establish CPI and Graham made false, deceptive, or misleading representations in violation of § 1692e.

CPI and Graham urge the Court to find that a violation of state rules of civil procedure cannot form the basis of a FDCPA claim because there is no private right of action to bring claims for alleged violation of procedural rules. This argument misses the mark for two reasons.

First, nothing in the FDCPA requires a private right of action in order to form the basis of a violation. A statement or representation may be false, deceptive, or misleading within the meaning of *Tavernaro* and not be actionable on its own. It is the nature of the representation or practice—not the presence of a separate cause of action—that makes for a violation of the FDCPA.

The same is true for the second reason. It is the nature of CPI and Graham's alleged acts and omissions—failing to include addresses and making false statements—that forms the basis of the FDCPA violation, not that such acts and omissions also happen to violate

the Wyoming court rules. The reverse is also true. Taking the position that violating rules of civil procedure can *never* form the basis of an FDCPA violation—a position CPI and Graham also appear to advocate—would lead to absurd results. Such a rule would encourage lawyers to blatantly violate court rules in furtherance of debt collection and swallow the FDCPA in its entirety. One of the express purposes of the FDCPA is to "eliminate abusive debt collection practices," and failing to conform to certain court rules runs afoul of this purpose. *See* 15 U.S.C. § 1692(e). In summary, McGrady has pled sufficient facts to make out a plausible FDCPA claim against both CPI and Graham.

## CONCLUSION AND ORDER

McGrady's Complaint alleges sufficient facts to state a plausible claim under the FDCPA against both CPI and Graham. Further, CPI and Graham are not shielded by Petition Clause Immunity in this case.

**IT IS THEREFORE ORDERED** that the Motion for Judgment filed by defendants Barney & Graham, LLC and Weston T. Graham (ECF No. 27) and the Motion for Judgment on the Pleadings filed by defendants Collection Professionals, Inc., Christopher Coccimiglio, and David C. Coccimiglio (ECF No. 29) are **DENIED**.

Dated this 27th day of September, 2022.

_____
Scott W. Skavdahl
United States District Judge