Scott E. Ortiz   WSB 5-2550
Thomas W. Rumpke WSB 6-2974
WILLIAMS PORTER DAY & NEVILLE  PC
PO Box 10700
Casper WY 82604
Phone:   307-265-0700
Email:   sortiz@wpdn.net
            trumpke@wpdn.net
*Attorneys for Defendants Barney & Graham, LLC and Weston T. Graham*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| KENNETH McGRADY, individually, and on behalf of all other similarly situated, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) )   Case No. 22-CV-100 |
| COLLECTION PROFESSIONALS, INC., a Wyoming corporation, BARNEY & GRAHAM, LLC, WESTON T. GRAHAM, CHRISTOPHER COCCIMIGLIO, and DAVID C. COCCIMIGLIO, | ) ) ) ) ) ) |

### MEMORANDUM OF LAW IN OPPOSITION TO CLASS CERTIFICATION

**COME NOW** Defendants Barney & Graham, LLC and Weston T. Graham (collectively "B&G"), by and through undersigned counsel, and hereby submit the following Memorandum of Law in Support in Opposition to Plaintiff's *Motion for Class Certification* dated April 19, 2023.

I.  **INTRODUCTION**

As detailed in this Court's *Order Denying Defendants' Motion for Judgment on the Pleadings* entered September 27, 2022, the purported class representative, Kenneth McGrady's, situation is unique. McGrady had the same identical complaint filed against him twice. (ECF No. 34 at 3). In *McGrady I* (CV 2021-201-COD), Judge Waters declared that the summons was defective and that the defect was so radical that service should be quashed. [Exhibit A, *Order Striking Process*]. Judge Waters did not find that the summons was so defective that it failed to provide notice or deny McGrady an opportunity to be heard. After all, McGrady appeared for the action. *See Reynolds v. Moore*, 2014 WY 20, ¶ 21, 318 P.3d 362, 367 (Wyo. 2014) ("[a] defendant's appearance in the action should be enough to prevent any technical error in form from providing a basis for invalidating the process") (internal quotation marks and citations omitted).

In *McGrady II* (CV-2021-656), Judge Darrah concluded that Judge Waters' ruling was the "law of the case" and dismissed the identical lawsuit. [Exhibit B, *Order Dismissing Lawsuit*]. Interestingly, Judge Darrah actually ruled that the complaint failed to state a claim on which relief can be granted. If the summons was radically defective such that it denied McGrady due process, then the circuit court did not have jurisdiction to make such a ruling.[1] Plaintiff makes no other mention of any other class member being sued twice. More importantly, there is no other record evidence that any other class member was sued twice.

II.  **FACTS**

According to McGrady, the class consists of "those individual consumers who received the defective summons within a one-year span." [ECF No. 44 at 3]. McGrady says "there are a total

---

[1] On March 16, 2022 (two weeks after he had signed the order dismissing *McGrady II*), Judge Darrah entered a judgment against Wesley Hammond in a case involving the same summons served on McGrady. [Exhibit N].

of 1628 accounts open during the relevant time frame of May 3, 2021 to February 15, 2022, for which a lawsuit was filed and the relevant summons would have been *used*."  [ECF No. 44 at 4 (emphasis added)].

However, updated discovery response from Collection Professionals, Inc. ("CPI") state there are only 1,021 accounts wherein the summons at issue was *served* on persons in Wyoming. [Exhibit C, CPI's Answer to Interrogatory No. 7; Exhibit D, List of Potential Claimants provided by CPI].  The list does not include persons never served because they cannot be class members since they were not misled by something they never saw.  After updating its discovery responses, CPI learned that 415 of the 1021 cases had co-defendants.  On August 24, 2023, CPI disclosed that 266 of the 415 codefendants had been served, but did not disclose how many of those co-defendants had judgments entered against them.  Thus, it appears from the information provided by CPI that the maximum class size could be 1,287.

Of the 1,021 potential claimants identified by CPI as having been served with an allegedly defective summons, 816 had a judgment taken against them (79.9%).  Only 205 of them did not have a judgment taken against them, like McGrady.  [*See* Exhibit D].[2]  If the court presumes a comparable judgment rate for the 266 co-defendants served, the total number of potential claimants would be 54 claimants who do not have judgments against them.[3]  This is important because McGrady, and on behalf of the class, claims actual damages.  [ECF No. 1 at 13].   However, as

---

[2] In looking at the State-court complaints, B&G has identified 15 debtors that it believes may not have correct judgment information in Exhibit D.  However, it results in there being four (4) more judgments as some of the State-court plaintiffs are marked as having judgment, when they did not, and some are marked not having judgments taken, when they did.

[3] If CPI is wrong and all 415 codefendants were served, the likely number of claimants that do not have judgments taken against them would be 288 if the Court presumes a constant judgment rate of about 80%.

explained below, those State-court judgments are not subject to collateral attack in this Court, and therefore, cannot be the basis for actual damages arising from the judgment (like bank fees arising from garnishments or amounts collected on the judgments), which it appears the class purports to claim as actual damages.[4]

Of the potential 1,287 debtor-claimants that CPI has represented were served with a summons, McGrady's counsel already represents 88 individuals in lawsuits filed in Park County Circuit Court. [Exhibit E, Consolidation Order]. The 88 State-court plaintiffs include Mr. McGrady's wife, Teresa. Thus, Plaintiff's counsel's client Mrs. McGrady has opted out of the class action, and Plaintiff's counsel's client, Mr. McGrady, seeks to represent the class. Of the 88 State-court plaintiffs, seven of them answered the CPI complaint. [Exhibits F through J (Answers filed by State-court plaintiffs in their underlying debt collection cases)].

### III.   APPLICABLE LAW

"The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Sherman v. Trinity Teen Sols., Inc.*, No. 2:20-CV-215-SWS, 2022 WL 17573837, at *1 (D. Wyo. Oct. 5, 2022) (internal quotation marks and citations omitted). "Federal Rule of Civil Procedure 23 sets forth the standards for certifying a class action and requires that all four prerequisites of Rule 23(a) and at least one of the three prerequisites of Rule 23(b) are satisfied." *Id.* "Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule— that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350, 131 S. Ct. 2541,

---

[4] *See* Part IV(A), *infra*.

2551, 180 L. Ed. 2d 374 (2011) (emphasis in original).  Thus, Rule 23(a) requires McGrady to prove all four of the following elements:

    (1)    numerosity (the class is so numerous that joinder of all members is impracticable);

    (2)    commonality (there are questions of law or fact common to the class);

    (3)    typicality (the claims or defenses of the representative parties are typical of the claims or defenses of the class); and

    (4)    adequacy (the representative parties will fairly and adequately protect the interest of the class).

*Sherman*, 2022 WL 17573837, at *1 (internal quotation marks and citations omitted).

If McGrady is able to prove numerosity, commonality, typicality, and adequacy, then he "must also satisfy through evidentiary proof at least one of the provisions of Rule 23(b)." *Id.* (internal quotation marks and citations omitted).  Although McGrady cites to Fed. R. Civ. P. 23(a)(5) & (6), no such provisions exist.  [ECF No. 44 at 8-10].

Instead, McGrady purports to rely upon Fed. R. Civ. P. 23(b)(3) by claiming that "questions of law or fact common to class members predominate over any questions affecting only individual members and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Under the FDCPA, the issue is whether the summons, when read as a whole with the complaint that was served with the summons, was "materially false, deceptive, or misleading to the reasonable consumer."  *Tavernaro v. Pioneer Credit Recovery, Inc.*, 43 F.4th 1062, 1072 (10th Cir. 2022).[5]

---

[5]  Some courts have held that the complaint must be read in conjunction with the summons to determine if service of process is sufficient.  *See James River Nat. Bank v. Haas*, 73 N.D. 374, 393, 15 N.W.2d 442, 451 (N.D. 1944) (consider complaint that was served with the summons).  Under the FDCPA, the *communication* must be considered and the *communication* in this case is the summons and the complaint, which McGrady concedes he was provided at the same time.  [ECF 1-1, summons noting that it was served with the complaint].

## IV.  ANALYSIS

### (A)  <u>Numerosity</u>

In a class action, every putative class member must have Article III standing. *TransUnion LLC v. Ramirez*, __ U.S. __, 141 S. Ct. 2190, 2208, 210 L. Ed. 2d 568 (2021). "[W]here the plaintiff's FDCPA claim arises from the instigation of a debt collection suit, the plaintiff does not have a complete and present cause of action, and thus no violation occurs within the meaning of § 1692k(d), until the plaintiff has been served." *Johnson v. Riddle*, 305 F.3d 1107, 1113 (10th Cir. 2002) (internal quotation marks and citations omitted).

McGrady identifies 1,628 outstanding accounts wherein the relevant summons would have been "used." However, CPI represented in its amended discovery responses that only 1,021 of the accounts had been served with a summons. [Exhibits C and D]. Although CPI emailed Plaintiff to indicate that there were an additional 415 "co-defendants" on the 1,021 accounts CPI identified, CPI did not say how many (if any) of the co-defendants had been served. The most recent information indicates only 266 of these co-defendants were served. Thus, the class of people who received a defective summons may be as high as 1,287, but it may be as low as 1,021. Plaintiff's counsel has already filed 88 lawsuits in State court thereby indicating the class is not so numerous that these matters cannot be handled on an individual basis in State court.

Although there may have been 1,628 accounts, McGrady fails to provide evidentiary proof of how many of those were actually served with the summons. At this time, neither B&G nor the Court knows how many of the additional 266 "co-defendants identified by CPI were served and/or had judgments taken against them.

McGrady is similarly situated to far fewer than 1,287 other potential class members. That is because McGrady did not have a judgment taken against him. Under the *Rooker-Feldman*,

doctrine, at least 816 of 1,021 identified potential class members actually sued had judgments taken against them in State court. These people are not proper plaintiffs in Federal court where the class seeks actual damages in the form of amounts collected pursuant to their State court judgments.

The *Rooker-Feldman* doctrine (which derives its name from two United States Supreme Court cases, *Rooker v. Fidelity Trust Company*, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983)) precludes federal courts from hearing "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284, 125 S.Ct. 1517, 161 L.Ed.2d 454 (2005). In short, "[i]f a federal court's decision on an issue requires a determination that the state court was wrong, then the action is properly characterized as an appeal and the federal court cannot hear the case." *Bosdorf v. Beach*, 79 F. Supp. 2d 1337, 1339 (S.D. Fla. 1999)). Therefore, this matter should not be certified as a class action because this Court would lack subject matter jurisdiction over many class members pursuant to the *Rooker-Feldman* doctrine.[6]

---

[6] The Tenth Circuit recently determined that the *Rooker-Feldman* did not apply to bar a claim brought under the FDCPA. *McMurray v. Forsythe Fin., LLC*, No. 21-4014, 2023 WL 4881446, at *1 (10th Cir. Aug. 1, 2023). *Forsythe* is distinguishable. In this case, the putative class members are seeking actual damages (including bank fees from garnishments and amounts paid under the judgments), which necessarily call into question the validity of the State court judgments used to collect those damages. *See Haye v. Collection Pros., Inc.*, No. 20-CV-153-NDF, 2021 WL 2176478, at *3 (D. Wyo. Jan. 22, 2021) (courts must look at "whether the state-court judgment caused, actually and proximately, the injury for which the federal-court plaintiff seeks redress"). Thus, by seeking damages arising from the enforcement of the judgments, McGrady makes the *Rooker-Feldman* doctrine applicable to this case.

"*Rooker–Feldman* applies where the plaintiff in federal court claims that the state court did not have jurisdiction to render a judgment." *Doe v. Mann*, 415 F.3d 1038, 1043 (9th Cir. 2005); *see also Olson Farms, Inc. v. Barbosa*, 134 F.3d 933, 936 (9th Cir.1998); *MacKay v. Pfeil*, 827 F.2d 540, 545 (9th Cir.1987); *Schmitt v. Schmitt*, 324 F.3d 484, 487 (7th Cir.2003); *Nelson v. Uran,* 1999 WL 170166, 175 F.3d 1015 (4th Cir.1999).  Even in a case where the complaint alleged that a state court judgment was obtained by fraud, *Rooker-Feldman* precluded the district court from exercising jurisdiction. *Smith v. Weinberger*, P.C., 994 F.Supp. 418, 424 (E.D.N.Y.1998); *see also Resler v. Messerli & Kramer, P.A.*, 2003 WL 193498, * 3 (D. Minn.2003) (holding that *Rooker–Feldman* bars federal plaintiff's FDCPA fraud claim, where fraud on court finding would nullify state court default judgment).

*Rooker-Feldman* also applies "when the party seeking to avoid the state court judgment alleges it is void for lack of proper service of process[.]" *In re Rifkin*, No. 08-22557, 2010 WL 2521458, at *2 (Bankr. D. Kan. June 18, 2010); *see also Lundahl v. Am. Bankers Ins. Co. of Fla.*, No. 2:12-CV-280-SWS, 2014 WL 11353617, at *2 (D. Wyo. Feb. 4, 2014) (this Court refusing to declare Utah judgment void).

In the context of the FDCPA, *Rooker-Feldman* bars FDCPA claims that would require the Federal courts to nullify a state court judgment. *Ellis v. CAC Financial Corporation,* 6 F. App'x 765, 769–70 (10th Cir. 2001).  In *Ellis,* the Court noted that although the plaintiffs did not "expressly seek to overturn the state court judgment[,]" the Federal court complaint did allege claims arising from the "procedures used to obtain the judgment, such as improper assignments of the amount due, perjury, and notarization of rubber-stamped signatures." *Elllis,* 6. F. App'x at 769.  The Tenth Circuit concluded that "[i]It would be impossible for a federal court to resolve their claims of fraud, malicious prosecution and abuse of process based on these allegations. . .

without calling into question the state court judgment[.]" *Ellis*, 6 F. App'x at 769; *see also Charchenko v. City of Stillwater*, 47 F.3d 981, 983 (8th Cir.1995) ("*Rooker–Feldman* precludes a federal action if the relief requested in the federal action would effectively reverse the state court decision or void its ruling"). As the District Court for the Eastern District of California succinctly explained in dismissing FDCPA claims for a lack of subject matter jurisdiction:

> The crux of Plaintiff's case rests on the allegation that Plaintiff was never served with Defendant's complaint and that his bank accounts were garnished without any prior notice. ***However in disputing the garnishment of his accounts, Plaintiff is inherently challenging the entry of default against him and the writ of execution that authorized the garnishment. The net effect is that Plaintiff is seeking to undermine the state court judgments. These judgments were rendered before the current district court proceeding, and any action by this Court in favor of Plaintiff on his FDCPA or RFDCPA claims would necessarily require review of those state court judgments.*** The *Rooker–Feldman* doctrine specifically bars this Court from doing so. If Plaintiff believes he has been wronged by the actions of the state court, he must turn to the state for remedy. This Court lacks jurisdiction to provide redress for Plaintiff's claims.

*Bryant v. Gordon & Wong L. Grp., P.C.*, 681 F. Supp. 2d 1205, 1208 (E.D. Cal. 2010) (emphasis added).

McGrady (and the class) has made a claim for actual damages. Those "actual" damages claim may include "disgorgement" damages wherein class members would seek to recover amounts that were collected pursuant State court judgments that have not been overturned. This may also include bank fees caused by garnishments pursuant to the State court judgments. Thus, although *Forsythe* may have said in dicta that *Rooker-Feldman* did not apply to that case, here where the class members are seeking actual damages arising from collection actions taken pursuant to a State-court judgments, the matters are inextricably intertwined such that those potential plaintiffs are not proper class members. Instead, they are relegated to filing cases in State court where *Rooker-Feldman* does not apply, like 88 of putative class counsel's clients have done.

9

**(B)** **Commonality**

McGrady claims that "[t]he overriding common question here is grounded in weather [sic] the FDCPA was violated by the Defendants' use of allegedly defective summons [sic] that failed to meet the requirements of Wyo. R. Civ. Pro. Cir. Ct. 3.1[.]"  [ECF No. 44 at 6].  McGrady further argues that a common question of fact is "whether such conduct naturally lead to 'oppress' and 'abuse' (15 U.S.C. Sec. 1692d) the class members by use of 'unfair or unconscionable means to collect or attempt to collect any debt' (15 U.S.C. Sec. 1692e) in a manner not 'permitted by law' (15 U.S.C. Sec. 1692f)." [*Id.*].

Members of a putative class must "possess the same interest and suffer the same injury." *General Telephone Company of Southwest v. Falcon*, 457 U.S. 147, 156, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982).  McGrady has not demonstrated that he is typical of the class members under this standard.  McGrady is the only potential class member that was haled into court twice.  His injury is that he incurred attorney's fees in defending actions that was not properly brought due to a defective summons.  There is no evidence that the other class members suffered a similar injury.  To the contrary, evidence demonstrates that most of the potential class members identified by McGrady had judgments taken against them.

In addition, McGrady's complaint seeks actual damages.  As outlined above, B&G anticipates that the class will seek actual damages in amounts paid on the underlying debts.  *See Alonso v. Blackstone Fin. Grp. LLC*, 962 F. Supp. 2d 1188, 1198 (E.D. Cal. 2013) (indicating that amounts paid after receiving deceptive dunning letters may be a permissible measure of damages).  As to all of the potential class members with judgments, such damages would not be recoverable under *Rooker-Feldman* because to allow such damages would directly call into question the underlying State court judgment.  As to those who entered payment plans with CPI, those claims

are not against B&G, and therefore, there are not a common claim or defense. Regardless, McGrady did not suffer the same type of injuries as other class members, and therefore, there are not common claims.

Moreover, calculating "actual" damages would require individualized fact finding and a causal connection between the alleged FDCPA violation and the damages. *See McMahon v. LVNV Funding, LLC*, 301 F. Supp. 3d 866, 882 (N.D. Ill. 2018) (plaintiffs would still have to prove causation to recover any such damages). It is not as simple as looking at a spreadsheet. Thus, the class members do not share common issues relating to damages.

### (C) Typicality

As noted by the Court in its *Order Denying Defendants' Motions for Judgment on the Pleadings,* McGrady is completely unique from any other potential class member. First, McGrady is the only class member identified as receiving an identical, second summons and complaint. That was the basis for this Court's determination that the second petition may have been a sham petition under *California Motor. See Calif. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 92 S. Ct. 609, 30 L. Ed. 2d 642 (1972). There is no evidence before this Court indicating any other class member was sued twice for the same debt after the first attempt at service was quashed.

Moreover, there is no evidence that any other class member hired counsel to object to the form of the summons. To the contrary, eight of the 88 State-court plaintiffs actually answered the complaint filed against them in circuit court. [Exhibits F through J]. Thus, there is no indication that McGrady's damages will be typical of the class.

As with numerosity and commonality, this factor does not counsel certifying a class action. McGrady is not the typical member of the putative class. He is unique and his claims do not represent the putative class's claims.

### (D)     <u>Adequacy of Representation</u>

"Two factors are important in determining whether the named plaintiffs provide fair and adequate protection for the interest of the class: (1) the class attorney's qualifications, experience, and ability to conduct the litigation and (2) whether the named plaintiffs have interests antagonistic to those of the class." *Versteeg v. Bennett, Deloney & Noyes*, P.C., 271 F.R.D. 668, 672 (D. Wyo. 2011). The Court must determine the legal adequacy of the representative parties by asking two questions: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Sherman v. Trinity Teen Sols., Inc.*, 339 F.R.D. 203, 205 (D. Wyo. 2021) (internal quotation marks and citation omitted).

"An attorney for the class must be loyal to each member of it, and not act based on interests antagonistic to it." *Hege v. Aegon USA, LLC*, 780 F. Supp. 2d 416, 432 (D.S.C. 2011) (internal quotation marks and citation omitted). Here, counsel for the putative class has already advised Mrs. McGrady to opt out of the class by filing her own State court lawsuit. [*See* Exhibit E (Teresa McGrady's case is CV-2022-277). B&G does not know how many of the 88 State-court plaintiffs have judgements against them.

Thus, putative class counsel is advising class members to opt out of the class thereby making 88 individual putative class members eligible for up to $1,000.00 in statutory damages while leaving other class members stuck with the statutorily capped damages of only 1% of CPI's book value, or about $30,000. *See Sanders v. Jackson*, 209 F.3d 998, 1001 (7th Cir. 2000). If McGrady is correct and there are 1,628 class members, each class member would be eligible for only about $18.00 in statutory damages. If B&G is correct (259 potential class members), each class member would still only get about $115.00, or $1/10^{th}$ of what Plaintiff's counsel's other 88

clients are seeking to recover. In fact, in February 2022, class counsel stated that a class action would detrimental to his clients:

> Class actions can be used to gather information from defendants through discovery, but unfortunately due the nature of the claim, the limited damages, and the inability to file a class action in Circuit Court, *a class action would be detrimental to our clients*.

[Exhibit K (McGrady v. Barney & Graham 000152-153)].

Putative class counsel has demonstrated he has a conflict of interest between 88 class members and the remaining potential class members that will result in those 88 class members receiving greater benefits than the remaining class members. In short, putative class counsel's conflict of interest between representing the 88 State-court plaintiffs and representing the class demonstrate that representation will not be adequate.

**(E)     Class Treatment is Not Superior To Other Methods Available to Resolve this Dispute and Common Questions of Fact and Law Do Not Predominate**

In his memorandum McGrady argues common issues of law and fact predominate and that class action is superior to other methods to resolve the controversy. [ECF No. 44 at 8-9]. However, in February 2022, counsel for the class stated that a class action was not superior. Instead, in August 2022, class members started filing State court complaints. Plaintiff's counsel has already filed 88 individual lawsuits and may have more individual claims in the wings. [*See* Exhibit E (Order consolidating 88 State court cases)].

Under the FDCPA, in State court prevailing individual plaintiffs may recover statutory damages up to $1,000.00, and can also seek their reasonable attorneys' fees (if successful). 15 U.S.C. § 1692(k)(a). However, in FDCPA class actions, class members as a group are limited to the recovery of the lesser of up to $500,000 or 1% of the net worth of the debt collector. *Id*. Because of the availability of statutory damages and attorney's fees, some courts have recognized

that in similar circumstances class-wide litigation is not superior to a claim-by-claim basis. *See e.g., Jones v. CBE Group, Inc.*, 215 F.R.D. 558, 570 (D. Minn. 2003); *Bryant v. Bonded Accounts Serv./Check Recovery*, 208 F.R.D. 251, 261 (D. Minn. 2000); *Lyles v. Rosenfeld Attorney Network*, 2000 WL 798824, *6 (N.D. Miss. May 17, 2000). Thus, it is clear that class treatment is not superior since the 88 State court plaintiffs will be eligible for up to $1,000.00 in statutory damages, but the remaining class members will be left to share 1% of CPI's net worth.

Moreover, common issues of law and fact do not predominate. [*See* Exhibit L, (Complaint filed by Kyle Burkhart)]. The case of Mr. Kyle. Burkhart demonstrates that common issues of law and fact do not predominate.

Mr. Burkhart was served in the state court collection action on October 16, 2021. In his State court FDCPA complaint, Mr. Burkhart claims that he is or will incur "attorney's fees and costs by filing for relief from judgment under W.R.C.P. 60(b) to defend [his] rights to procedural due process callously ripped from [him] by the Defendant[.]" [Exhibit L at 7 (¶ 47)]. But on November 29, 2021, CPI voluntarily moved to dismiss that lawsuit and it was dismissed on December 1, 2021. There was never a judgment taken against Mr. Burkhart. [Exhibit M, Civil Docket Sheet and pleadings from Case NO. CV-2021-166B].

This is just one example of the unique facts and circumstances found in the cases involving class members. Unlike situations with dunning letters where everyone got the same letter and it had the same effect, in the litigation process each case is different. Eight of putative class counsel's clients actually answered the complaint. How can claimants who answered the underlying collection complaint allege that anything misleading in the summons caused any damages? Mrs. McGrady hired a lawyer and the case was eventually dismissed so her actual damages are legal fees, not amounts paid. CPI voluntarily dismissed the case against Mr. Burkhart a few weeks after

it filed suit, thus eliminating Mr. Burkhart's purported need to pay a lawyer to file a motion to set aside the judgment against him. Therefore, common issues of fact and law do not predominate. The only common issues are that CPI was the debt collector on all the class cases and that is used similar summonses in those cases.

## V.   CONCLUSION

Kenneth McGrady's claims are not typical of any class of persons seeking to recover damages under the FDCPA for the use of a defective summons. As lawyers often say, every lawsuit is different. As demonstrated by the evidentiary materials attached hereto, there are unique factual scenarios in each case involved in this putative class action. For the reasons set forth above, class certification should be denied.

Dated this 28th day of August, 2023.

BARNEY & GRAHAM, LLC., and
WESTON T. GRAHAM, Defendants

 /s/   **THOMAS W. RUMPKE**
SCOTT E. ORTIZ    WSB 5-2550
THOMAS W. RUMPKE WSB 6-2974
WILLIAMS PORTER DAY & NEVILLE  PC
PO Box 10700
Casper  WY 82601

Attorneys For Barney & Graham, LLC
and Weston T. Graham

15

**CERTIFICATE OF SERVICE**

     I hereby certify, on the 28th day of August, 2022, I served the foregoing Memorandum of Law via the court's electronic service, addressed to:

Bret T. Allred
YELLOWSTONE LAW GROUP LLC
117 North Bent Street    Suite C
Powell  WY 307-271-1034
bret@yellowstonelawgroup.com

Christopher R. Jones, 7-4837
Larry Bartel, *PHV*
GORDON & REES LLP
555 Seventeenth Street, Ste. 3400
Denver, CO 80202
crjones@grsm.com
lbartel@grsm.com


       /s/   **THOMAS W. RUMPKE**
       **THOMAS W. RUMPKE     WSB 6-2974**